UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GARY POWELL *et al.*,
    *Plaintiffs*,

v.

OCWEN LOAN SERVICING, LLC *as servicer for Deutsche Bank Nat'l Tr. Co. et al.*,
    *Defendants*.

No. 3:18-cv-01879 (JAM)

**ORDER GRANTING MOTION TO DISMISS**

Plaintiffs Gary and Gail Powell have filed this *pro se* lawsuit against two loan servicing companies—defendants Ocwen Loan Servicing, LLC and Litton Loan Servicing LP—in connection with a state court foreclosure of their property in Wallingford, Connecticut. Defendants have moved to dismiss. I conclude that the Powells' state law claims are barred by either the *Rooker-Feldman* doctrine or *res judicata*. I further conclude that the Powells' federal law claims fail to state cognizable claims for relief. Accordingly, I will grant defendants' motion to dismiss.

### BACKGROUND

I take the facts as stated in the complaint as true for purposes of this ruling and also take judicial notice of the filings in the related foreclosure action in the Superior Court. *See Bailey v. Interbay Funding, LLC*, 2018 WL 1660553, at *2 & n.2 (D. Conn. 2018).

In May 2002, the Powells entered into a mortgage loan agreement with Accredited Home Lenders. Doc. #1 at 2 (¶ 8). The Powells signed a promissory note for $445,000 and issued a mortgage in favor of Accredited. *Ibid.* Litton would go on to service the loan until 2011, when Litton was bought out by Ocwen. *Ibid.* (¶ 5).

1

The Powells defaulted on the loan and completed a number of trial periods modifying the loan between 2008 and the end of 2011. *Ibid.* (¶¶ 9-10). They complied with all terms of the modifications and timely paid all the mortgage payments under the trial period modified plans. *Id.* at 4 (¶ 11). According to the Powells, however, defendants failed to apply their trial period loan payments against their account, and they never received a mortgage interest statement from defendants. *Id.* at 3 (¶ 10).

The mortgage was transferred in December 2011, and Ocwen began servicing the mortgage around that time. *Id.* at 4 (¶ 12). Ocwen did not accept the trial period payments, and began accelerating the mortgage. *Ibid.* The Powells tried and failed to continue modifying the loan agreement. *Ibid.* (¶ 13).

In May 2016, Ocwen filed a foreclosure complaint against the Powells in the Connecticut Superior Court for New Haven. *Ibid.* (¶ 14); *see also* Complaint to *Deutsche Bank Nat'l Tr. Co. v. Powell*, NNH-CV16-6062358-S (Conn. Super. 2016). The parties began mediation in November 2016. Doc. #1 at 4 (¶ 15). In April 2017, they agreed on a modification. *Ibid.* Gary Powell then sought to clarify whether the modification agreement included certain escrow amounts for taxes and insurance, and counsel for Deutsche Bank (not named as a defendant in this action) informed him that he would a receive a corrected copy of the agreement confirming that was the case. *Ibid.* But the Powells did not receive those documents, and defendants instead filed a motion for judgment. *Ibid.* (¶¶16-17). According to the Powells, defendants continued to push for foreclosure instead of honoring the agreement they made during the course of mediation in April 2017. *Id.* at 4-5 (¶¶ 16-19).

On October 3, 2017, Deutsche Bank—the named state court foreclosure plaintiff—moved to default the Powells in the foreclosure action for failure to plead. *See* Doc. #119.00 to *Deutsche*

*Bank Nat'l Tr. Co. v. Powell*, NNH-CV16-6062358-S (Conn. Super. 2017). The Superior Court granted the default, *see* Doc. #119.10 to *id.*, but then reopened the case when the Powells filed an answer and several counterclaims. *See* Docs. ##121.00, 122.10 to *id.* The Powells' counterclaims named several new defendants to the action including Ocwen, *see* Doc. #121.00 at 4 (¶ 7) to *id.*, and alleged claims including fraud, quiet title, breach of contract, violation of the federal Real Estate Settlement Procedures Act (RESPA), breach of fiduciary duty, and negligence. *See id.* at 5 (¶ 15). Deutsche Bank then successfully moved for summary judgment and to strike the Powells' counterclaims. *See* Docs. ##124.10, 125.10 to *id.*

On July 23, 2018, the Superior Court entered a judgment of foreclosure by sale. Doc. #134.00 to *id.* The Powells moved to amend the judgment, and the Superior Court entered a modified judgment on August 27, 2018, extending the sale date on the property. Doc. #136.00 to *id.*

The Powells then filed this federal lawsuit on November 16, 2018. Doc. #1. Count I of the complaint alleges that Ocwen and Litton violated the federal Fair Debt Collection Practices Act (FDCPA) in multiple ways: by failing to properly apply loan payments to the debt under the modification agreement; by inducing the Powells to enter into a modification without properly applying their trial plan payments; by sending communications to the Powells that falsely represented the character and amount of the debt; and by threatening foreclosure despite the fact that the Powells were current on their payments and making them in accordance with their trial plan. *Id.* at 5-6 (¶¶ 21-38).

Count II of the complaint alleges that defendants violated the federal Truth in Lending Act (TILA) by failing to timely credit payments and by charging late fees and penalties in connection with their failure to timely credit payments. *Id.* at 7 (¶¶ 43-48).

Count III of the complaint alleges a claim for breach of contract including breach of the duty of good faith and fair dealing. It alleges that the parties had a mortgage contract that defendants did not properly service such that the mortgage contract should be deemed void. *Id.* at 7-8 (¶¶ 49-55).

Count IV of the complaint alleges a claim for estoppel and unclean hands. It alleges that defendants have been unjustly enriched through their misrepresentations and that defendants should be estopped from proceeding in foreclosure. *Id.* at 8 (¶¶ 56-62).

Count V of the complaint alleges a claim for accounting. It alleges that defendants have miscalculated amounts owed by the Powells, including by charging fees and penalties on payments previously made. *Id.* at 9 (¶¶ 63-67).

Lastly, Count VI of the complaint alleges a claim for fraud. It alleges that defendants have continuously misrepresented the loan balance, escrow amounts, and fees assessed against the Powells. *Id.* at 9-10 (¶¶ 68-75).

The Powells seek damages and injunctive relief. *Id.* at 10-11. They seek in part to "[e]njoin Defendants from mortgage foreclosure during the pendency of this action . . . and from otherwise taking any steps to deprive Plaintiffs of ownership of that property." *Id.* at 10. Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## DISCUSSION

For purposes of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or failure to state a claim under Rule 12(b)(6), a complaint may not survive unless it alleges facts that taken as true give rise to plausible grounds to sustain plaintiffs' claims for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155 (D. Conn.

2016). This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Because the focus must be on what facts a complaint alleges, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).

Similarly, because federal courts are courts of limited jurisdiction, a federal court complaint must at minimum allege facts that give rise to plausible grounds for a court to conclude that it has federal jurisdiction. *See Lapaglia*, 155 F. Supp. 3d at 155. When a defendant's challenge to federal jurisdiction under Rule 12(b)(1) is fact-based and goes beyond the pleadings, the plaintiff bears the burden of showing facts that establish subject matter jurisdiction. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016). But to the extent that the defendant's evidence does not contradict plausible allegations of the complaint that support jurisdiction, then the plaintiff may rely on allegations in the complaint. *Id.* at 57.

The Court liberally construes the pleadings of a *pro se* party in a non-technical manner to raise the strongest arguments that they suggest. *See, e.g.*, *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017) (*per curiam*). Still, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *The* Rooker-Feldman *doctrine*

Defendants argue that the Court lacks subject matter jurisdiction because of the *Rooker-Feldman* doctrine—a doctrine that jurisdictionally bars the federal courts from hearing "cases that function as *de facto* appeals of state-court judgments." *Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018). There are four requirements that must be met in order for *Rooker-*

5

*Feldman* to bar a plaintiff's claim: "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* at 645.

The first and fourth of these elements are clearly established here: the Powells lost their foreclosure case in state court, and judgment entered in that case before the Powells filed this federal court action. *See* Doc. #136.00 to *Deutsche Bank Nat'l Tr. Co. v. Powell*, NNH-CV16-6062358-S (Conn. Super. Aug. 27, 2018); Doc. #1 (Nov. 16, 2018); *see also Moran v. Morneau*, 129 Conn. App. 349, 356 (2011) ("[A] judgment of foreclosure constitutes an appealable final judgment when the court has determined the method of foreclosure and the amount of the debt.").

That leaves for consideration only the second and third elements—whether the Powells complain of an injury that was actually caused by the state court foreclosure judgment and whether they seek review and rejection of the state court foreclosure judgment. To the extent that the Powells seek to altogether enjoin the foreclosure or to otherwise impeach any basis for the foreclosure judgment, then it is clear that the second and third elements are satisfied and that the *Rooker-Feldman* doctrine bars this lawsuit to such extent that the Powells' claims would either invalidate or imply the invalidity of the state court foreclosure action. *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014). In light of these principles, I conclude that the *Rooker-Feldman* doctrine precludes consideration of the Powells' claim for injunctive relief against the foreclosure judgment as well as the Powells' causes of action for breach of contract (Count III) and estoppel (Count IV), both of which aim to invalidate the legal basis for the state court foreclosure judgment.

I cannot yet reach the same conclusion as to the rest of the Powells' claims, which complain about defendants' alleged misrepresentations about the crediting of their payments and violations of federal laws governing lending and debt collection. For example, the Powells' FDCPA claim alleges a statutory injury distinct from any caused by the foreclosure judgment. *See Cho*, 910 F.3d at 645 (noting that "we have concluded that *Rooker-Feldman* did not apply where a plaintiff filed a federal suit alleging that defendants' conduct during the course of a state foreclosure action violated, *inter alia*, the Fair Debt Collection Practices Act"). As the Second Circuit has observed, a plaintiff "is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed *prior* in time to the state-court proceedings, and so could not have been caused by those proceedings." *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007). Accordingly, I conclude that the *Rooker-Feldman* doctrine does not warrant dismissal of Count I (FDCPA), Count II (TILA), Count V (accounting), and Count VI (fraud).

**Res judicata**

Notwithstanding *Rooker-Feldman*'s limited applicability to the Powells' complaint, defendants correctly argue that the Powells' remaining state law claims are barred by the doctrine of *res judicata*. *See* Doc. #18 at 10-13. In evaluating the *res judicata* effect of a previous state court judgment, federal courts apply that state's own *res judicata* doctrine. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Connecticut law, the doctrine of *res judicata* or claim preclusion provides that a final judgment when rendered on the merits operates as an absolute bar to a subsequent action upon the same claim, either between the same parties or between those in privity with the parties. *See Wheeler v. Beachcroft, LLC*, 320 Conn. 146, 156-57 (2016). "Generally, for *res judicata* to apply, four elements must be met: (1) the

7

judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue." *Ibid.* In light of the public policy that a party should not be able to relitigate a matter that it has previously had a full and fair opportunity to litigate, *res judicata* under Connecticut law extends not only to claims that were actually litigated but those that might have been made in the prior litigation between the parties. *Id.* at 157.

As to the first required element, there is no doubt that the Connecticut Superior Court was a court of competent jurisdiction. As to the second element, it is also clear that there is privity between the parties in the two actions. Although the state court foreclosure action was commenced by Deutsche Bank (a non-party to this federal action), the Powells added Ocwen to the same lawsuit. *See* Doc. #121.00 at 4 to *Deutsche Bank Nat'l Tr. Co. v. Powell*, NNH-CV16-6062358-S (Conn. Super. 2017). The Powells did not name Litton as a party in the state court action, but they allege that Litton acted in the same role as loan servicer as did Ocwen until Ocwen purchased it. Doc. #1 at 1-2 (¶¶ 4-6). Because Connecticut courts determine privity by looking principally to whether the alleged privies "shar[e] the same legal right," *Comm'r of Envt'l Prot. v. Farricielli*, 307 Conn. 787, 800 (2013), I conclude that Litton is in privity with Ocwen for purposes of *res judicata* in this action.

Next, as to the third and fourth elements, I must consider whether the Powells had an adequate opportunity to litigate the same claims they now seek to pursue in this federal action. A party's prior opportunity to litigate claims may be determined by reference to what the party would have been allowed to assert as a defense or counterclaim in the prior action. Under Connecticut law, a party who is sued for foreclosure may raise any defense or claim that has a

8

reasonable nexus to the making, validity, or enforcement of the mortgage note. *See U.S. Nat'l Bank Ass'n v. Blowers*, 177 Conn. App. 622, 632 (2017); *see also Martino v. Seterus, Inc.*, 2018 WL 3553406, at *7 (D. Conn. 2018).

The Powells complain of defendants' alleged failure to properly credit and account for payments that the Powells insist they have made toward the mortgage loan. *See* Doc. #1 at 2-4, 9-10 (¶¶ 64-66, 69-73), 25-49. A fair reading of the complaint is that this misconduct in turn enabled the filing of a foreclosure action in 2016 and its ultimate enforcement by judgment in 2018. "When the counterclaims allege that the foreclosure-plaintiff's actions led the foreclosure-defendant to default, Connecticut courts have allowed those counterclaims as related to the enforcement of the mortgage." *Martino*, 2018 WL 3553406, at *7; *see also Blowers*, 177 Conn. App. at 629 ("[O]ur courts have permitted several equitable defenses to a foreclosure action. [I]f the mortgagor is prevented by accident, mistake or fraud, from fulfilling a condition of the mortgage, foreclosure cannot be had."). On this basis, I conclude that the accounting claim (Count V) and the fraud claim (Count VI)—both of which are premised on the Powells' contention that defendants misleadingly failed to credit their payments, Doc. #1 at 9-10—could have been raised in the foreclosure action and are now barred by *res judicata*.[1]

The Powells' briefing makes no effort to reckon with the doctrine of *res judicata* except to argue that they should be permitted to pursue their claims because they have recently acquired new evidence of defendants' misconduct. Doc. #21-1 at 3, 5. But Connecticut law is clear that *res judicata* does not turn on whether a party happens to have acquired additional evidence or

---

[1] It is true that Connecticut courts generally decline to find that a lender's misconduct during foreclosure mediation has a reasonable nexus to the making, validity, or enforcement of the mortgage note. *See, e.g.*, *Bank of N.Y. Mellon v. Mauro*, 177 Conn. App. 295, 316-17 (2017). But to the extent that the Powells complain of this type of misconduct *see* Doc. #1 at 4 (¶¶ 15-17), their allegation that "[t]he parties reached an agreement," *ibid.* (¶ 15), indicates that any claims based on an erroneous accounting or fraudulent misstatement of the loan modification "relate to the enforcement of the mortgage." *Blowers*, 177 Conn. App. at 630.

9

developed new legal theories to support claims that could have been brought in the first instance in the prior action. *See Wheelock*, 320 Conn. at 157-58. If the Powells believe they have new evidence, their remedy is to seek relief from the state court that granted judgment against them in the first instance rather than to file a new lawsuit in a new court as they have done here.

*Federal law claims*

The only remaining claims are under the FDCPA and TILA. As to the FDCPA claim, the Powells' briefing does not address or dispute defendants' argument that it is time-barred by the one-year statute of limitations that governs FDCPA claims. *See* 15 U.S.C. 1692k(d). The complaint does not allege any facts to suggest that any act of improper debt collection took place within one year of the date that the Powells filed their complaint in this action on November 16, 2018. Accordingly, I conclude that the Powells' FDCPA claim is barred by the statute of limitations.[2]

As to the TILA claim, the Powells' briefing does not address or dispute defendants' argument that the defendants as mere loan servicers are not "creditors" subject to suit under TILA. *See Vincent v. The Money Store*, 736 F.3d 88, 105-06 (2d Cir. 2013) (discussing restrictive definition of "creditor" under TILA to include in relevant part only "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness") (citing 15 U.S.C. 1602(g)); *Kissinger v. Wells Fargo Bank, N.A.*, 888 F. Supp. 2d 1309, 1312 (S.D. Fla. 2012) ("TILA does not impose liability on servicers, but rather on creditors who fail to comply with various requirements under TILA."); *Blaize-Sampeur v. McDowell*, 2006 WL 3903957, at *3 n.4 (E.D.N.Y. 2006) (Bianco, J.) (no TILA liability against

---

[2] I am aware that the Supreme Court has very recently granted certiorari on the question of whether the FDCPA's statute of limitations is tolled until a plaintiff is aware of his injury. *See Rotkiske v. Klemm*, No. 18-328 (to be argued Oct. 16, 2019). Because the Powells have not alleged any facts to show that they were delayed until some point within one year of the filing of this lawsuit in discovering any FDCPA injury, that question is not implicated here.

mortgage broker and loan servicing company). Accordingly, I conclude that the Powells have failed to state a cognizable TILA claim. As such, I will also dismiss the Powells' TILA claim.[3]

CONCLUSION

For the reasons stated above, the Court GRANTS defendants' motion to dismiss (Doc. #17). The Powells' claims for breach of contract and for estoppel and unclean hands are barred by the *Rooker-Feldman* doctrine. The Powells' claims for accounting and fraud are barred by *res judicata.* The Powells' federal law claims fail to state cognizable claims for relief. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 29th day of July 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[3] Moreover, because the Powells address neither defendants' FDCPA time-bar argument, nor defendants' argument regarding proper TILA defendants, I consider the Powells to have abandoned their federal claims. *See Doe v. Nat'l Ramah Comm'n, Inc.*, 2018 WL 4284324, at *8 (S.D.N.Y. 2018) (collecting cases).